E-FILED
IN COUNTY CLERK'S OFFICE
PIERCE COUNTY, WASHINGTON

February 08 2021 8:30 AM

KEVIN STOCK
COUNTY CLERK
NO: 21-2-04494-0

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE COUNTY OF PIERCE**

| | |
|---|---|
| BRANDON THOMAS ROBERTS, | NO. |
| Plaintiff, | |
| v. | COMPLAINT |
| CITY OF BAINBRIDGE ISLAND, a political subdivision of the State of Washington, MATTHEW HAMNER, Chief of the Bainbridge Island Police Department, in his personal capacity; DALE JOHNSON in his personal capacity; WELLPATH, LLC, a Delaware Limited Liability Company and f.k.a. CORRECT CARE SOLUTIONS, LLC a Delaware Limited Liability Company; KITSAP COUNTY, a Washington State municipality, MARK RUFENER, in his personal capacity; JOHN GESE, in his personal capacity; GARY SIMPSON, in his personal capacity; JOHN AND JANE DOES 1-30, in their personal capacities, | |
| Defendants. | |

**COMES NOW** the above-named Plaintiff, by and through his attorney of record,

Kylie J. Finnell of Kitsap Law Group, to complain and allege as follows:

## I.   PARTIES

1.1     Plaintiff BRANDON THOMAS ROBERTS is an adult resident of Pierce County.

COMPLAINT - 1

KITSAP LAW GROUP
ATTORNEYS AT LAW
3212 NW BYRON STREET, SUITE 101
SILVERDALE, WASHINGTON 98383
(360) 692-4888 • FAX (360) 692-4987

1.2    Defendant City of Bainbridge Island is a political subdivision of the State of Washington.  City of Bainbridge Island has various departments, including but not limited to the Bainbridge Island Police Department ("BIDP"), which is responsible for providing law enforcement services within City of Bainbridge Island.

1.3    Defendant MATTHEW HAMNER, was the chief of BIPD, who at all times relevant hereto, was acting under color of law.  In this role as Chief, Defendant Hammond was responsible for the supervisory decisions as they relate to Defendant Officer Dale Johnson. Defendant Hammond's acts and omissions were, at all times alleged, affirmatively linked to the behavior of Defendant Officer Dale Johnson, in the sense that he encouraged, condoned, and/or acquiesced in their acts, omissions and established practices.

1.4    Defendant DALE JOHNSON was a BIPD Officer who, at all times relevant hereto, was acting within the scope of his employment, and under color of law.

1.5    Defendant WELLPATH, LLC, a Delaware Limited Liability Company and f.k.a. CORRECT CARE SOLUTIONS, LLC ("CCS") is a Delaware limited liability company with corporate headquarters in Tennessee.  Defendant Kitsap County contracted with CCS to provide medical services to detainees and inmates at the Kitsap County Jail while Mr. Roberts was detained in there in.

1.6    Defendants JOHN AND JANE DOES 1-15 are yet-identified CCS employees responsible for policymaking regarding and/or administrating the provisions of healthcare to Mr. Roberts.

1.7    At all material times, each CCS Defendant, including Defendants Doe 1-15, acted under color of state law and were state actors.

KITSAP LAW GROUP
ATTORNEYS AT LAW
3212 NW BYRON STREET, SUITE 101
SILVERDALE, WASHINGTON 98383
(360) 692-4888 ● FAX (360) 692-4987

1.8    Defendant KITSAP COUNTY is a political subdivision of the State of Washington. Kitsap County has various departments including but not limited to the Kitsap County Sheriff's Office, which operates the Kitsap County Jail ("Jail"). Kitsap County is, and was at all times mentioned herein, responsible for the actions or inactions, and the polices, procedures, and practices/customs of all health services provided to detainees in the Jail.

1.9    Defendant MARK RUFENER was Kitsap County's Corrections Chief. Defendant Rufener was an administrator who supervised the Jail at the time of Mr. Roberts was detained in the Jail and was responsible for ensuring the presence and implementation of proper policies, procedures, and training. Defendant Rufener Defendant Rufener was responsible for the training, supervision and discipline of County Jail employees and/or agents, including his co-Defendants, CCS, and Does 1 through 30.

1.10    Defendant JOHN GESE is the Kitsap County Undersheriff. Defendant Gese is an administrator who supervised the Jail at the time of Mr. Roberts was detained and responsible for ensuring the presence and implementation of proper policies, procedures, and training.   Defendant Gese was responsible for the training, supervision and discipline of Jail employees and/or agents, including his co-Defendants, CCS, and Does 1-30.

1.11    Defendant GARY SIMPSON is the Kitsap County Sheriff. Defendant Simpson is the administrator who supervised the Jail at the time Mr. Roberts was detained at the Jail. Defendant Gese was responsible for the training, supervision and discipline of Jail employees and/or agents, including his co-Defendants, CCS, and Does 1-30.

1.12    Defendants Simpson, Gese, and Rufener shall be referred to collectively as "Kitsap Policymaking Defendants." At all material times, each Kitsap Policymaking Defendant acted under color of law and was a state actor.

COMPLAINT - 3

1.13    Defendants JOHN AND JANE DOES 16-30 are yet-identified Kitsap County employees responsible for policymaking regarding and/or administrating the provisions of healthcare to Mr. Roberts.

1.14    Defendants Kitsap County, Simpson, Gese, Rufener, and Does 16-30 shall be referred to collectively as "County Defendants." At all material times, each County Defendant acted under color of the laws, statutes, ordinances, and regulations of the State of Washington and was a state actor.

## II.      JURISDICTION AND VENUE

2.1    All acts and omissions alleged herein occurred in Kitsap County, Washington.

2.2    Venue is proper in Pierce County Superior Court pursuant to RCW 36.01.050. Pierce County is one of the nearest two judicial districts to Defendant Kitsap County. This court has jurisdiction over the parties and subject matter of this action.

## III.      FACTS GIVING RISE TO CLAIM

3.1    On February 7, 20218, Law enforcement officers and medical first responders responded to the parking lot of Ordway Elementary in Bainbridge Island, Washington after receiving reports of an unconscious woman. The woman was Mr. Roberts' friend, and when first responders arrived, Mr. Roberts was beside her giving her CPR. Mr. Roberts told the first responders that she had overdosed on heroin. Some first responders on the scene told Mr. Roberts to leave because his car, a Ford Mustang, was in the way and he was hovering around worried about his friend. Mr. Roberts left driving his Ford Mustang.

3.2    Despite Mr. Roberts being free to leave, Defendant Johnson pursued Mr. Roberts in his patrol car after he drove away. Later, law enforcement witnesses claimed Mr. Roberts was ordered to stay and struck an officer in the knee as he left.

COMPLAINT - 4

KITSAP LAW GROUP
ATTORNEYS AT LAW
3212 NW BYRON STREET, SUITE 101
SILVERDALE, WASHINGTON 98383
(360) 692-4888 • FAX (360) 692-4987

3.3     Defendant Johnson eventually struck the driver's side door of Mr. Roberts' vehicle when he reached a dead end making it impossible for Mr. Roberts to exit through the driver's side door of his vehicle.

3.4     Law enforcement officers, including Defendant Johnson surrounded Mr. Roberts' vehicle and ordered him to exit.  Mr. Roberts initially refused to exit, and made unflattering comments to Defendant Johnson.

3.5     Mr. Roberts eventually began maneuvering to exit through the front passenger door as the driver's side door was blocked by Defendant Johnson's patrol car.  Mr. Roberts is 6' 2" and weighs approximately 240 pounds so him exiting past the center console through the passenger side door would be an awkward maneuver in a Ford Mustang.

3.6     As Mr. Robert's was preparing to exit, Defendant Johnson moved from his position on the driver's side of the vehicle where Mr. Roberts was calling him names, to the passenger side and shot Mr. Roberts in the chest and hand without just cause.

3.7     Defendant Johnson later alleged that while Mr. Roberts was inside the vehicle he lunged across the interior of the vehicle with a knife and was a threat to the officers outside the vehicle.

3.8     No other law enforcement officers near the vehicle discharged their weapons.

3.9     Numerous bystanders saw Defendant Johnson shoot Mr. Roberts and recorded the shooting on video.  No video shows Mr. Roberts lunging at anyone with a knife and evidence later showed that one of Defendant Johnson's bullets went through Mr. Roberts' hand while it was on the steering wheel.

3.10     Defendant Johnson was wearing a department issued body camera but did not activate his body camera until after he shot Mr. Roberts.

KITSAP LAW GROUP
ATTORNEYS AT LAW
3212 NW BYRON STREET, SUITE 101
SILVERDALE, WASHINGTON 98383
(360) 692-4888 • FAX (360) 692-4987

3.11    Mr. Roberts was the second person Defendant Johnson shot while on duty in less than a year.  Defendant Johnson was one of several officers who shot and killed Robert D. Yeiser on July 9, 2017.

3.12    BIPD has a policy, custom and established practice of condoning and encouraging the type of shoot first ask questions later mentality deployed by Defendant Johnson.

3.13    In 2012 a federal jury found Bainbridge Island and its Police Chief liable and awarded the family of Doug Ostling $1,000,000.00 after he was shot by BIPD officers who were coworkers with Defendant Johnson.

3.13    BIPD also has a policy, custom, and established practice of failing to supervise and train its officers to use deadly force as a last resort, as required by generally accepted police practices.

3.14    Defendant Johnson was not disciplined, reprimanded, or provided additional training for his reckless and negligent acts and omissions.  Instead, he was praised for bravery by his supervisors including Defendant Hamner and given a medal.

3.15    Each of these policies, customs, and established practices, described above and in other respects as well, were a direct, proximate cause of Mr. Roberts' injuries.

3.16    After he was shot, Mr. Roberts was transported to Harborview Medical Center in Seattle, WA for medical care for the gunshot wounds.

3.17    Bainbridge Island police officers were assigned to guard Mr. Roberts at the hospital until he was discharged pending investigation of Defendant Johnson's allegations.

3.18    The day after he was shot, Mr. Roberts was transported by Bainbridge Island police officers to the Kitsap County Jail.

KITSAP LAW GROUP
ATTORNEYS AT LAW
3212 NW BYRON STREET, SUITE 101
SILVERDALE, WASHINGTON 98383
(360) 692-4888 • FAX (360) 692-4987

3.19    Bainbridge Island Police Officer Bob Day met with the medical staff at the jail and gave them the discharge paperwork from Harborview Medical Center. The medical staff at Harborview had given explicit instructions for how to care for Mr. Roberts injuries.

3.20    Harborview's instructions included pain medication oxycodone, and twice daily chest wound packing with lidocaine jelly.

3.21    On February 9, 2018, Mr. Roberts was charged by the Kitsap County Prosecuting Attorney's Office under Kitsap County Superior Court Cause No. 18-1-00233-18 with one count of Assault in the First Degree against "Bainbridge Police Department Officer John Doe".

3.22    Mr. Roberts was scheduled to appear in court on February 9, 2018 for arraignment but was unable to appear because he was bleeding and had not had his bandages changed.

3.23    Mr. Roberts was interviewed for the preparation of a bail study on February 9, 2018 and noted he was supposed to "have the gauze changed and it has not been done."

3.24    On February 13, 2018, Mr. Roberts was arraigned, entered a plea of not guilty and held on $1,000,000 bail.  Mr. Roberts was unable to post bail and remained in custody pending trial.

3.25    In the following weeks while awaiting trial and recovering from his injuries, the jail medical staff mocked and laughed at Mr. Roberts' pleas for pain relief medication, denied his pleas for pain medication, forced him to sleep on the floor exacerbating the pain from the wounds, did not follow the discharge instructions from Harborview, and frequently delayed changing his bandages resulting in him having to ball up available clothing to stop the bleeding from the gunshot wound to his chest and failed to use the lidocaine jelly as recommended by Haborview for pain.

KITSAP LAW GROUP
ATTORNEYS AT LAW
3212 NW BYRON STREET, SUITE 101
SILVERDALE, WASHINGTON 98383
(360) 692-4888 • FAX (360) 692-4987

3.26    On March 11, 2019, the information was amended and included the charges of

Assault in the First Degree on Officer Johnson, one charge of Assault in the First Degree on

Kitsap County Sheriff's Deputy David R. Corn (another officer near Mr. Robert's vehicle),

one charge of Possession of a Controlled Substance, and one charge of Attempting to Elude

a Police Vehicle and proceeded to jury trial.

3.27    On March 28, 2019, Mr. Roberts was found not guilty of the count of Assault in the

First Degree on Officer Johnson, guilty of Possession of a Controlled Substance and

Attempting to Elude a Police Vehicle, and the jury did not reach a unanimous decision as to

the remaining Assault in the First Degree on Officer Corn.

3.28    The Court released Mr. Roberts after the verdict with no bail required.

3.29    On December 6, 2019 Mr. Roberts plead guilty to one count of Assault in the Fourth

Degree and one count of Unlawful Carrying or Handling of a Weapon to avoid being retried

on the remaining count of Assault in the First Degree on Officer Corn.

3.30    Mr. Roberts continues to experience the mental and physical effects of his injuries

related to Officer Johnson shooting him, and the hostility and indifference shown to him by

medical staff in the Jail.

3.31    He is undergoing treatment for anxiety and posttraumatic stress disorder which have

been exacerbated by the Defendants.

3.32    He experiences reduced sensation and numbness in the fingers of his injured hand.

### IV. FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 – Excessive Force and Brutality

4.1    By virtue of the facts set forth above, Defendants City of Bainbridge Island, Hamner,

and Johnson are liable for deprivation of Mr. Robert's civil rights guaranteed by the Fourth

Amendment to the Constitution of the United States and 42 U.S.C. § 1983, to be free from

KITSAP LAW GROUP
ATTORNEYS AT LAW
3212 NW BYRON STREET, SUITE 101
SILVERDALE, WASHINGTON 98383
(360) 692-4888 • FAX (360) 692-4987

the use of excessive force and physical brutality.

4.2     By virtue of the facts set forth above, Defendant City of Bainbridge Island and Defendant Hamner are liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), in that a policy or custom can be inferred from a showing of ratification of an unconstitutional act and BIPD's polices, customs, and established practices.

## V. SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 – Deliberate Indifference

5.1     By virtue of the facts set forth above, Defendants CCS, Kitsap County, Ruefner, Gese, Simpson, and Does 1-30, acting under the color of state law in their individual capacities, deprived Mr. Roberts as a pretrial detainee of the rights, privileges and immunities secured by the Fourteenth Amendment by subjecting him, or through their deliberate indifference, allowing others to subject him, to delay and denial of access to medical care for a serious medical condition.

5.2     By virtue of the facts set forth above, Kitsap County and its Policymaking Defendants, and CCS each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights and serious medical needs of Mr. Roberts.

5.3     These Defendants knew that Mr. Roberts' gunshot wounds were serious injuries that were painful and required medical treatment; Defendants further knew that they had a duty to provide Mr. Roberts medical care including pain relief; and Defendants intentionally delayed, or denied Mr. Roberts urgently need medical treatment.

KITSAP LAW GROUP
ATTORNEYS AT LAW
3212 NW BYRON STREET, SUITE 101
SILVERDALE, WASHINGTON 98383
(360) 692-4888 • FAX (360) 692-4987

5.4     As a result of Defendants' deliberate indifference to Mr. Robert's need for medical treatment, Mr. Roberts suffered damages and deprivation of constitutional rights, as described herein.

5.5     By the actions and omissions described above, these Defendants violated 42 U.S.C. § 1983, depriving Mr. Roberts of the right to be free from deliberate indifference to Mr. Roberts' serious medical needs while in custody and confined in jail as a pretrial detainee, as secured by the Fourteenth Amendment.

5.6     As a proximate result of the foregoing wrongful acts and/or omissions, Mr. Roberts sustained injuries and damages as set forth above.  Mr. Roberts is therefore entitled to general and compensatory damages in an amount to be proven at trial.

5.7     In committing the acts alleged above, these Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional wellbeing of Mr. Roberts and by reason thereof, Mr. Roberts is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983 and other state and federal law against these Defendants.

5.8     By virtue of the facts set forth above, as supervisors Defendant Kitsap County and its Policymaking Defendants, and CCS each permitted and failed to prevent the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals with deliberate indifference to the rights and medical needs of Mr. Roberts and are liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), in that a policy or custom can be inferred from a showing of ratification of an unconstitutional act and their polices, customs, and established practices.

COMPLAINT - 10

## VI. THIRD CAUSE OF ACTION
### Negligence, Gross Negligence, and Negligence *Per Se*

6.1     Defendants CCS and Does 1-15 are not subject to prefiling tort claim requirements. At all material times, Defendants CCS and Does 1-15 owed Mr. Roberts the duty to act with due care in the execution and/or enforcement of any right, law, or legal obligation.

6.2     At all material times, Defendants CCS and Does 1-15 owed Mr. Roberts the duty to act with due care in the execution and/or enforcement of any right, law, or legal obligation.

## VII. FOURTH CAUSE OF ACTION
### Negligent Infliction of Emotional Distress

7.1     Defendants CCS and Does 1-15 are not subject to prefiling tort claim requirements. The negligence and deliberate indifference of Defendants CCS and Does 1-15, as described above caused Mr. Roberts emotional distress, and as a direct and proximate result, Mr. Roberts suffered damages, and continues to incur damages in an amount to be established at trial.

## VIII. DISCOVERY AND LIMITED PHYSICIAN/PATIENT WAIVER

8.1.    Plaintiffs waives the physician patient privilege ONLY to the extent required by RCW 5.60.060, as limited by the Plaintiffs constitutional rights of privacy, contractual rights of privacy and the ethical obligation of physicians and attorneys not to engage in *ex-parte* contact between a treating physician and the patient's legal adversaries.

## IX.     JURY DEMAND

9.1     Plaintiff hereby demands a jury trial.

## X.     AMENDMENTS

10.1    Plaintiff hereby reserves the right to amend this Complaint.

## XI.     PRAYER FOR RELIEF

COMPLAINT - 11

11.1   Adjudge and declare that the actions, customs, and policies, and practices of Defendants described in this Complaint violated Mr. Robert's rights under the federal and state constitutions and award Mr. Roberts economic and noneconomic damages pursuant to 42 U.S.C. §§ 1983 and 1988, in an amount to be determined at trial;

11.2   Punitive damages under 42 U.S.C. § 1983, federal law and Washington law, in an amount according to proof and which is fair, just, and reasonable;

11.3   All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; and as otherwise may be allowed by Washington and/or federal law.

11.4   That Plaintiff be awarded general and special damages against Defendants CCS and Does 1-15 in an amount to be proven at trial for negligence, gross negligence, negligence *per se*, and negligent infliction of emotional distress as allowed by law including but not limited to past and future medical expenses and other health care expenses; past and future loss of earnings; permanent partial impairment of earnings and earning capacity; pain and suffering, both mental and physical; past and future permanent partial disability; loss of enjoyment of life and for reduction of life expectancy; past and future special damages; and interest calculated at the maximum amount allowable by law, including prejudgment interest.

11.5   For such other and further relief as the Court deems just and equitable.

**DATED** this _5_ day of _February_, 2021.

KITSAP LAW GROUP

Kylie J. Finnell WSBA #34997
Attorney for Plaintiffs

COMPLAINT - 12