1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

6
7
8
9
10
11
12
13
14
15
16

BRANDON THOMAS ROBERTS,

        Plaintiff,

  v.

CITY OF BAINBRIDGE ISLAND;
MATTHEW HAMNER, Chief of the
Bainbridge Island Police Department,
in his personal capacity; DALE
JOHNSON, in his personal capacity;
WELLPATH, LLC f/k/a CORRECT
CARE SOLUTIONS, LLC; KITSAP
COUNTY; MARK RUFENER, in his
personal capacity; JOHN GESE, in his
personal capacity; GARY SIMPSON,
in his personal capacity; and JOHN
and JANE DOES 1–30,

        Defendants.

C21-5165 TSZ

ORDER

17
18
19
20
21
22

THIS MATTER comes before the Court on a motion to dismiss, docket no. 26, brought pursuant to Federal Rule of Civil Procedure 12(b)(6) by defendants Kitsap County, Mark Rufener, John Gese, and Gary Simpson (the "Kitsap Defendants"), in which defendant Wellpath, LLC ("Wellpath") has joined, docket no. 29. Having reviewed all papers filed in support of, and in opposition to, the motion and joinder, the Court enters the following order.

23

ORDER - 1

**Background**

On February 7, 2018, plaintiff Brandon Thomas Roberts was shot by Bainbridge Island Police Officer Dale Johnson. Am. Compl. at ¶¶ 3.1–3.6 (docket no. 23). After he was injured, plaintiff was treated at Harborview Medical Center ("Harborview") and then transported to the Kitsap County Jail. Id. at ¶¶ 3.17 & 3.19. On February 9, 2018, plaintiff was charged with first degree assault of a police officer.[1] Id. at ¶ 3.22. Plaintiff alleges that he could not attend a related court hearing on February 9, 2018, because he was bleeding and the bandages on his gunshot wounds had not been changed. Id. at ¶ 3.23. At his arraignment on February 13, 2018, plaintiff entered a plea of not guilty; plaintiff could not post bail, and he remained in custody pending trial. Id. at ¶ 3.25. Plaintiff asserts that, during the ensuing days or weeks, the Kitsap County Jail's medical staff "mocked," "laughed at," and denied his pleas for pain relief medication, forced him to sleep on the floor, failed to follow Harborview's discharge instructions (including a recommendation to use lidocaine jelly for pain), and delayed in changing his bandages. Id. at ¶ 3.26.

At the time plaintiff was detained at the Kitsap County Jail, inmates received medical services from Wellpath, which was formerly known as Correct Care Solutions,

---

[1] After a jury trial, plaintiff was convicted of attempting to elude a pursuing police vehicle and possession of a controlled substance. Am. Compl. at ¶ 3.38. The jury found plaintiff not guilty of first degree assault as to Officer Johnson and was unable to reach a unanimous verdict on the charge of first degree assault as to Kitsap County Deputy Sheriff David R. Corn. Id. at ¶¶ 3.37 & 3.38. Plaintiff was released from custody on or about March 28, 2019. Id. at ¶ 3.38 & 3.39. Plaintiff later pleaded guilty to fourth degree assault of Deputy Corn and unlawful carrying or handling of a weapon. Id. at ¶ 3.40.

ORDER - 2

LLC ("CCS").  See id. at ¶ 2.5.  During this same period, defendant Gary Simpson was the Kitsap County Sheriff, but he has since retired.  Id. at ¶ 2.11; see also Andrew Binion, *Kitsap County commissioners pick John Gese as new Kitsap County sheriff*, KITSAP SUN (Aug. 10, 2021), https://www.kitsapsun.com/story/news/2021/08/09/commissioners-pick-john-gese-new-kitsap-county-sheriff/5548786001/ [hereinafter "KITSAP SUN article"].  Defendant John Gese, who was previously the Kitsap County Undersheriff, is now the Kitsap County Sheriff.  Am. Compl. at ¶ 2.10; see also KITSAP SUN article.  Defendant Mark Rufener was the Chief of Corrections for Kitsap County until he retired in August 2021.  Am. Compl. at ¶ 2.9; see also Kitsap County Sheriff's Office, FACEBOOK (Aug. 7, 2021), https://m.facebook.com/kitsapcountysheriff/videos/lieutenant-mark-rufener-retires/4511972188821120/?extid=SEO.

According to the Amended Complaint, on November 7, 2017, roughly three months before plaintiff was taken into custody, former Sheriff Simpson wrote a letter to CCS concerning its deficiencies, including failure to timely conduct inmate physicals and failure to provide medical-treatment information to the Chief of Corrections as required by contract.  Am. Compl. at ¶ 3.29.  An article published by the KITSAP DAILY NEWS on September 11, 2018, reported that CCS's contract with Kitsap County was due to expire at the end of 2018, and the company had elected not to submit a bid to renew the agreement.  See Ex. B to Macklin Decl. (docket no. 36-1) (referenced in Am. Compl. at ¶ 3.33).  The KITSAP DAILY NEWS indicated that two other entities had tendered proposals to Kitsap County, and former Sheriff Simpson envisioned that the new contract would include updated provisions to ensure inmate medical services would be consistent

ORDER - 3

with current standards.  Id.  The September 2018 article further revealed that former Sheriff Simpson was lobbying the Kitsap County Board of Commissioners to establish an auditor position to oversee the practices of the contracted medical provider.  See id.; see also Am. Compl. at ¶ 3.33.

Plaintiff asserts two claims against the Kitsap Defendants, namely (i) under 42 U.S.C. § 1983, for violation of his Fourteenth Amendment rights as a pretrial detainee, and (ii) under state common law, for negligence.  See Am. Compl. at ¶¶ 5.1–5.8 & 8.6–8.8.  Plaintiff alleges that the Kitsap County Sheriff's Office, former Sheriff Simpson, former Undersheriff and current Sheriff Gese, and former Chief of Corrections Rufener were "aware CCS was an inadequate health care provider." Id. at ¶ 3.34.  Plaintiff's theory of liability appears to be that the Kitsap Defendants were deliberately indifferent and/or negligent because they did not prematurely terminate the contract with CCS.  Id. at ¶ 3.36.  The Kitsap Defendants move to dismiss both the § 1983 and negligence claims.

With respect to Wellpath (or CCS), plaintiff has pleaded (i) a § 1983 claim, (ii) a negligence claim, and (iii) a negligent infliction of emotional distress claim.  Id. at ¶¶ 5.1–5.8, 6.1–6.2, & 7.1.  Wellpath's joinder seeks dismissal of all three claims.  The City of Bainbridge Island, Police Chief Matthew Hamner, and Officer Johnson, against whom plaintiff has pleaded claims of excessive force and negligence, id. at ¶¶ 4.1–4.2 & 8.1–8.5, have not filed a responsive pleading or motion, and regardless of how the Court rules on the Kitsap Defendants' motion and Wellpath's joinder, this case will remain pending.

ORDER - 4

**Discussion**

**A.      Standard for Rule 12(b)(6) Motion**

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The complaint must indicate more than mere speculation of a right to relief.  Id.  When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Id. at 558.  A complaint may be lacking for one of two reasons:  (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim.  Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  In ruling on a motion to dismiss, the Court must assume the truth of a plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor.  Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. Twombly, 550 U.S. at 570.  If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

**B.      Section 1983**

To establish a claim under § 1983, plaintiff must show *inter alia* that (i) a right secured by the Constitution and laws of the United States was violated, and (ii) the deprivation was committed by a person acting under color of state law.  See, e.g., West v.

ORDER - 5

*Atkins*, 487 U.S. 42, 48 (1988).  The pending motion and joinder do not contest that, as a pretrial detainee, plaintiff had at least the constitutional rights enjoyed by convicted prisoners or that, in the same way that the Eighth Amendment protects convicted inmates, the Fourteenth Amendment shields pretrial detainees from deliberate indifference to their serious medical needs.  See *Kellogg v. Kitsap County*, No. C12-5717 RJB, 2013 WL 4507087, at *3 (Aug. 22, 2013) (quoting *Bell v. Wolfish*, 441 U.S. 520, 545 (1979)); see also *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016) (en banc).  In addition, the Kitsap Defendants and Wellpath do not dispute that any actions taken by them would have been under color of state law.  See *West*, 487 U.S. at 49–57 (observing that "a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law" and holding that a private medical provider who contracts to offer services to inmates operates under color of state law for purposes of § 1983).  What the Kitsap Defendants and Wellpath do challenge is plaintiff's failure to plead facts tending to show deliberate indifference on the part of any individual or the existence of a policy or custom that resulted in the alleged constitutional tort.

       **1.**      **Personal-Capacity Claims**

Former Sheriff Simpson, current Sheriff Gese, and former Chief of Corrections Rufener have been sued in their personal, as opposed to official, capacities.  To establish personal liability under § 1983, plaintiff must demonstrate that the individual defendant caused the deprivation of the federal right at issue.  See *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); see also *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (Individual

ORDER - 6

1  "[l]iability under section 1983 arises only upon a showing of personal participation by the
2  defendant.  A supervisor is only liable for constitutional violations of his subordinates if
3  the supervisor participated in or directed the violations, or knew of the violations and
4  failed to act to prevent them." (citation omitted)).  In contrast, in an official-capacity
5  action, the "policy or custom" of the entity that employed the defendant must have played
6  a part in the constitutional violation.  <u>Graham</u>, 473 U.S. at 166.

7        The Amended Complaint recites no allegation indicating that Simpson, Gese, or
8  Rufener were personally involved in the allegedly deficient medical care that plaintiff
9  received at the Kitsap County Jail.  Rather, plaintiff's theory of liability relates to actions
10 taken or not taken in their official capacities concerning CCS's then-continuing role as
11 the health care provider for the Kitsap County Jail.  <u>See</u> Am. Compl. at ¶¶ 3.34–3.36
12 (docket no. 23) (accusing Simpson, Gese, and Rufener of knowing that CCS was offering
13 inadequate services and of "wait[ing] it out" rather than terminating CCS's contract).
14 Plaintiff's original complaint was similar in nature, and plaintiff has already been given
15 an opportunity to cure, but he has failed to do so with respect to personal-capacity claims.
16 <u>See</u> Minute Order at ¶ 1 (docket no. 18).  Thus, plaintiff's § 1983 claims against Gary
17 Simpson, John Gese, and Mark Rufener, in their personal capacities, are DISMISSED
18 with prejudice.

19       **2.**    **<u>Policy or Custom Claims</u>**

20       Kitsap County and Wellpath seek an early exit from this litigation on the ground
21 that they cannot be held liable on a respondeat superior theory.  <u>See Monell v. Dep't of</u>
22 <u>Soc. Servs. of NYC</u>, 436 U.S. 658, 691 (1978) ("a municipality cannot be held liable
23

ORDER - 7

*solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory" (emphasis in original)); <u>Tsao v. Desert Palace, Inc.</u>, 698 F.3d 1128 (9th Cir. 2012) (concluding that <u>Monell</u> applies to § 1983 claims against private businesses when such claims are based on actions that the businesses' employees took under color of state law).  Plaintiff's claim against Kitsap County does not, however, appear to rely on vicarious liability, but rather on Kitsap County's on-going relationship with CCS despite former Sheriff Simpson's awareness that certain services were not being timely provided by CCS.[2]  A municipality's duty to respond to the serious medical needs of incarcerated individuals is non-delegable; the duty is not absolved by contracting with a private entity to offer medical services, particularly if the municipality has reason to know that such entity's performance falls below a constitutional level.  <u>See</u> <u>Ancata v. Prison Health Servs., Inc.</u>, 769 F.2d 700, 705 (11th Cir. 1985) (citing <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976)).  Whether plaintiff can establish that Kitsap County's delay in parting ways with CCS was causally connected to the treatment he received while in Kitsap County Jail remains to be seen, but for now, Kitsap County will remain a defendant in this matter.[3]  <u>See</u> <u>id.</u> at 704 n.6 (observing that,

---

[2] Both Kitsap County and Wellpath argue that any delay in performing an intake physical was unrelated to plaintiff's § 1983 claim.  Plaintiff, however, alleges that, on the second day after he was shot, he missed a court hearing because medical personnel at the Kitsap County Jail failed to change his bandages and he was "covered in blood." Am. Compl. at ¶ 3.32 (docket no. 23).  A causal connection between CCS's consistently tardy evaluations of newly booked prisoners and plaintiff's experience is not so implausible as to support Kitsap County's and Wellpath's requests for dismissal with prejudice.

[3] Given the types of allegations plaintiff is making, he could have elected to sue Sheriff Simpson in his official capacity, in which event current Sheriff Gese would have been substituted as a

unlike in <u>Estelle</u>, in <u>Ancata</u>, the plaintiff alleged that "the actions and policies of the county and the sheriff's office did affect in various ways the health care" he was given).

With respect to Wellpath, although plaintiff has not explicitly alleged a policy or custom, he has described systemic problems about which former Sheriff Simpson called CCS to task in a six-page letter.  <u>See</u> Am. Compl. at ¶ 3.29 (docket no. 23).  Contrary to Wellpath's contention, the Amended Complaint sets forth enough factual material to state a plausible claim that Wellpath's practices (<u>e.g.</u>, examination delays, understaffing, data withholding) were the "actionable cause" of the alleged constitutional violation.  <u>See</u> <u>Tsao</u>, 698 F.3d at 1146 (explaining that "actionable cause" requires a showing of both "but for" and proximate causation).  Wellpath criticizes the Amended Complaint for failing to specify "the who, what, where, and when" of plaintiff's claims, <u>see</u> Joinder at 3 (docket no. 29), but the operative pleading has made clear the nature of the alleged maltreatment, as well as the place where and period during which it occurred.  The Amended Complaint has also named as defendants several John and Jane Does, who are or were Wellpath employees, and plaintiff will be permitted to conduct discovery to discover their identities.

---

defendant pursuant to Federal Rule of Civil Procedure 25(d), <u>see</u> <u>Graham</u>, 473 U.S. at 166 n.11, but a suit against the Kitsap County Sheriff, in an official capacity, is the equivalent of naming Kitsap County as the defendant, <u>see</u> <u>id.</u> at 167 n.14 (observing that official-capacity actions against local government officials are no longer necessary because, under <u>Monell</u>, municipalities may be sued directly for damages and injunctive or declaratory relief).

ORDER - 9

C. **Negligence and Negligent Infliction of Emotional Distress**

Plaintiff concedes that his negligence claims are not well pleaded.[4] See Resp. at 7 (docket no. 31). Moreover, in his apparent request for an opportunity to amend, see id., plaintiff does not set forth any allegations that would support a negligence claim against former Sheriff Simpson, current Sheriff Gese, or former Chief of Corrections Rufener in their personal capacities. Thus, plaintiff's negligence claims against Gary Simpson, John Gese, and Mark Rufener, in their personal capacities, are DISMISSED with prejudice. As to Kitsap County and Wellpath, which would have respondeat superior liability for any negligence of their employees, the Amended Complaint provides sufficient notice of the nature of plaintiff's negligence claims, and the issues of what duties were owed to plaintiff and whether they were breached are matters more appropriate for dispositive motion practice or trial, after the parties have had an opportunity to conduct discovery.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) The Kitsap Defendants' Rule 12(b)(6) motion to dismiss, docket no. 26, is GRANTED in part and DENIED in part. Plaintiff's claims against Gary Simpson, John

---

[4] The Kitsap Defendants attempted to argue that plaintiff's negligence claims are barred by res judicata, but they appear to have abandoned such contention in light of plaintiff's explanation that the dismissal on which they based their assertion of estoppel was premised on a lack of jurisdiction, and not on the merits of the claims. See Resp. at 7–8 (docket no. 31) (citing Exs. B & C to George Decl. (docket nos. 27-2 & 27-3)); see also Reply at 6–7 (docket no. 34) (making no mention of res judicata).

Gese, and Mark Rufener, in their personal capacities, are DISMISSED with prejudice. The motion is otherwise denied, and Kitsap County will remain a defendant in this action.

      (2)    Wellpath's joinder in the Rule 12(b)(6) motion to dismiss, docket no. 29, is DENIED. Wellpath will remain a defendant in this action.

      (3)    The deadline for filing amended pleadings remains October 18, 2021. If plaintiff seeks to name any former or current Wellpath employees as defendants, he must request leave to do so on or before this date. In the absence of a timely-filed motion to amend, the Court will dismiss plaintiff's claims against John and Jane Does 1–30 without prejudice.

      (4)    Having reviewed the parties' Agreed Amendment to Joint Status Report, docket no. 30, indicating that the parties will be ready for trial on or after July 6, 2022, but providing no further explanation, the Court DECLINES to continue the trial, which is currently set for May 9, 2022. *See* Minute Order (docket no. 22).

      (5)    The Clerk is DIRECTED to update the docket in a manner consistent with this Order and to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 24th day of August, 2021.

*[signature: Thomas S. Zilly]*

Thomas S. Zilly
United States District Judge